JUDGE DOW

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MAGISTRATE JUDGE COLE

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 19 CR 788 |
| v. | Violation: Title 18, United States Code, Section 371 |
| REBECCA HEDMAN | |

FILED

OCT 17 2019

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

The UNITED STATES ATTORNEY charges:

1. At times material to this indictment:

   a. The Chicago Midwest Regional Joint Board ("CMRJB"), with its headquarters in Chicago, Illinois, was a labor union. CMRJB was affiliated with Workers United and the Service Employees International Union ("SEIU," or "International Union"). CMRJB had members in approximately 13 states throughout the Midwest.

   b. Amalgamated Social Benefits Association ("ASBA") was an employee welfare benefit plan maintained by CMRJB which provided certain services for CMRJB members through premium arrangements with employers.

   c. The Sidney Hillman Health Center ("SHHC") was a primary care practice which provided medical benefits and services to ASBA. CMRJB members with eligible plans could receive primary care services at SHHC.

   d. The SHHC employed and entered independent contracting agreements with various physicians. When unable to provide SHHC patients necessary treatment, SHHC physicians referred those patients to outside private medical service

providers. Referrals could be made by an SHHC employee or by individual doctors at SHHC.

      e.     Robert Kurtycz was the Comptroller of CMRJB, and was an officer and employee of CMRJB. Kurtycz was also the plan administrator for the ASBA and the Secretary/Treasurer of the SHHC.

      f.     Individual A was an insurance broker for Blue Cross/Blue Shield of Illinois ("BCBS") and the owner and operator of Company A, a limited liability company doing business in Chicago, Illinois.

      g.     Defendant REBECCA HEDMAN was an officer and agent of three medical service providers, Rapid Rehab of Illinois ("RRI"), Chicago Ambulatory Surgery Association ("CASA"), and Chicago Pain and Orthopedic Institute, LLC ("CPOI"). CPOI is a medical practice specializing in orthopedic surgery.

      h.     Doctor A was a physician licensed to practice medicine in the State of Illinois. Doctor A maintained regular office hours and saw patients at SHHC pursuant to an independent contractor agreement prior to May 6, 2019.

      i.     Doctor B was a physician licensed to practice medicine in the State of Illinois. HEDMAN employed Doctor B at CPOI as a physician.

2.   Between no later in or about the middle of 2013 and continuing until at least in or about June 2014, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

REBECCA HEDMAN,

defendant herein, knowingly conspired and agreed with Robert Kurtycz and Individual A, and others known and unknown to the Grand Jury, to commit an offense against the United States, that is, to use and cause to be used a facility in interstate commerce with the intent to promote, manage, and carry on, and to facilitate the promotion, management, and carrying on, of an unlawful activity, namely, commercial bribery in violation of 720 ILCS 5/29A, and thereafter, did perform and attempt to perform an act of promotion, management, and carrying on, and facilitation of the promotion, management, and carrying on, of the unlawful activity, in violation of Title 18, United States Code, Section 1952(a)(3).

Manner and Means of the Conspiracy

3.   It was part of the conspiracy that Kurtycz, in exchange for money from HEDMAN, offered to use his position at CMRJB and on the Board of Directors for SHHC to terminate SHHC's independent contracting agreement with a then incumbent SHHC physician (Doctor A) and to replace that physician with a CPOI doctor employed by HEDMAN (Doctor B) and to arrange for SHHC employees to refer patients to CPOI.

4.   It was further part of the conspiracy that HEDMAN agreed to pay Kurtycz money to install Doctor B as the SHHC physician, thereby enabling Doctor B to refer

SHHC patients to CPOI and thereby generate additional business for CPOI, and to arrange for SHHC employees to refer patients to CPOI physicians.

5. It was further part of the conspiracy that HEDMAN, Kurtycz and Individual A used cellular phones, which were interstate facilities, including the text messaging function, to communicate regarding the execution of their scheme, including to coordinate the payment, pickup and delivery of HEDMAN's payments to Kurtycz through Individual A.

6. It was further part of the conspiracy that HEDMAN paid Kurtycz these moneys in multiple installments, both in cash and through checks made payable to Individual A. HEDMAN wrote these checks from bank accounts held in the names of her various companies, including RRI, CASA and CPOI. HEDMAN made those checks payable to Individual A, knowing that Individual A would give all or part of those moneys to Kurtycz in keeping with their agreement to install Doctor B as a physician at SHHC. HEDMAN made those checks payable to Individual A to conceal that Kurtycz was the true recipient of the money. HEDMAN also paid Kurtycz cash both directly and through Individual A.

7. It was further part of the conspiracy that Individual A delivered to Kurtycz all or a portion of the cash and check proceeds that HEDMAN gave Individual A for Kurtycz. On some occasions, Individual A endorsed the entire check that HEDMAN made payable to him over to Kurtycz. On other occasions, Individual A cashed the check that HEDMAN made payable to him and delivered all or a portion of those cash proceeds to Kurtycz.

8. It was further part of the conspiracy that, on or about March 12, 2014, and in exchange for HEDMAN's payments, Kurtycz, in his capacity as Secretary/Treasurer of SHHC, terminated Doctor A's independent contracting agreement with SHHC and gave him a 60-day notice.

9. It was further part of the conspiracy that, on or about May 6, 2014, and in exchange for HEDMAN's payments, Kurtycz, in his capacity as Comptroller of CMRJB and Secretary/Treasurer of SHHC, caused SHHC to enter an independent contracting agreement with one of HEDMAN's CPOI doctors, Doctor B, in keeping with his agreement with HEDMAN.

10. It was further part of the conspiracy that Kurtycz, Individual A, and HEDMAN concealed, misrepresented, and hid, and caused to be concealed, misrepresented, and hidden, the existence and purpose of the conspiracy, and acts done in furtherance of the conspiracy.

Overt Acts

11. In furtherance of the conspiracy and to effect its unlawful objectives, defendant HEDMAN, with Kurtycz and Individual A, committed and caused to be committed the following overt acts, among others:

    a. On or about October 7, 2013, HEDMAN signed a check from CASA to Individual A for approximately $6,000, which Individual A later cashed and gave at least half of the proceeds to Kurtycz.

    b. On or about February 4, 2014, HEDMAN, Kurtycz and Individual A met in Chicago and discussed the terms of an agreement in which HEDMAN would pay

Kurtycz multiple installments of money in exchange for Kurtycz replacing Doctor A with one of HEDMAN's physicians (Doctor B) at SHHC.

  c. On or about February 4, 2014, during their meeting, HEDMAN gave Kurtycz an amount of cash.

  d. On or about March 12, 2014, Kurtycz, in his capacity as Secretary/Treasurer of SHHC, gave Doctor A a letter giving Doctor A 60 days' notice of the termination of his independent contractor agreement with SHHC.

  e. On or about March 12, 2014, Individual A sent HEDMAN a text message, advising that Kurtycz had given Doctor A 60 days' notice of the termination of Doctor A's independent contractor agreement with SHHC.

  f. On or about March 14, 2014, Kurtycz directed a staff member of SHHC to obtain Doctor B's curriculum vitae from HEDMAN, to transmit Doctor B's curriculum vitae to the medical director of SHHC, and to recommend that the medical director of SHHC hire Doctor B as Doctor A's replacement at the SHHC physician.

  g. On or about April 8, 2014, HEDMAN signed a check from RRI to Individual A for approximately $5,000, which Individual A later endorsed to Kurtycz.

  h. On or about April 8, 2014, Individual A sent Kurtycz a text message, advising that Individual A planned to pick up the following morning a check that HEDMAN had written.

  i. On or about April 12, 2014, Kurtycz deposited into his personal Fifth Third Bank account the RRI check for approximately $5,000 that HEDMAN had signed and made payable to Individual A on or about April 8, 2014.

j. On or about April 21, 2014, HEDMAN signed a check from RRI to Individual A for approximately $10,000.

k. On or about April 21, 2014, HEDMAN, Kurtycz and Individual A met at Erie Street Café in Chicago.

l. On or about May 6, 2014, Kurtycz caused SHHC to enter into an independent contractor agreement with Doctor B.

m. On or about May 8, 2014, HEDMAN signed a check from CASA to Individual A for $5,000, which Individual A later endorsed to Kurtycz.

n. On or about May 8, 2014, HEDMAN sent Individual A a text message, advising that she had left a check for him to collect with her doorman.

o. On or about May 8, 2014, Individual A sent HEDMAN a text message, advising that he had signed her May 8 check over to Kurtycz.

p. On or about May 8, 2014, Kurtycz deposited into his personal Fifth Third Bank account the Chicago Ambulatory Surgery Associates check for approximately $5,000 that HEDMAN had earlier that day signed and made payable to Kurtycz.

q. On or about May 19, 2014, Kurtycz sent Individual A a text message, asking Individual A whether he would be bringing Kurtycz a payment.

r. On or about June 23, 2014, HEDMAN sent Individual A a text message, asking Individual A to address the low number of SHHC patients that had

been referred to CPOI, notwithstanding her prior advance of over $85,000 toward Kurtycz and Individual A.

All in violation of Title 18, United States Code, Section 371.

_____
John R. Lausch, Jr.
UNITED STATES ATTORNEY